ROBERT L. GRESSITT, ET AL. *v.* CHARLES W. ANDERSON, ET UX.

[No. 58, October Term, 1946.]

 

 

 

 

 

*Decided February 6, 1947.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, HENDERSON, and MARKELL, JJ.

*Charles C. Lyons* and *Hyman Ginsberg,* with whom were *Ginsberg & Ginsberg* on the brief, for the appellants.

*William H. Hudgins,* with whom were *Wyatt & Jones* on the brief, for the appellees.

MARBURY, C. J., delivered the opinion of the Court.

The appellees, by a written lease under seal, rented the property, 1678 Yakoma Road, Towson, in Baltimore County, from Better Housing, Incorporated, the owner. The lease, dated April 27, 1944, was for a term of one year, beginning on that date and ending on the 26th day of April, 1945, without further notice from either party, at a total rental of $570 for the term, payable in equal monthly installments. One of the agreements in the lease was as follows: "It is further agreed that said Tenants Charles W. & Marie J. Anderson, his wife, have the option of purchasing this dwelling at a price of $4700.00 subject to an annual ground rent of $78.00 any time during the life of this lease after April 27, 1944. Terms of such sale to be submitted in the form of Contract of Sale and subject to approval of the F. H. A."

After the expiration of the term, it is alleged that the appellees continued in possession with the consent of the owner, and the latter continued to accept from them the same monthly rental. The appellees, therefore, from April 26, 1945, were tenants from year to year. *Smith v. Pritchett,* 168 Md. 347, 178 A. 113, 98 A. L. R. 212; *Schaeffer v. Bilger,* 186 Md. 1, 45 A. 2d 775, 163 A. L. R. 706. On November 8, 1945, Better Housing; Incorporated, assigned the property (it being leasehold) to William E. Marling, and, on February 18, 1946, Marling assigned it to the appellant, Robert L. Gressitt. On the last-mentioned date, Gressitt executed a purchase-money

mortgage of the property to the appellant, Baltimore Federal Savings & Loan Association. On April 18, 1946, the appellees tendered the appellant, Gressitt, a contract of sale, under seal, executed by them for the purchase of said property at the option price of $4,700, of which $300 was tendered as a deposit, and the balance was stated in the contract to be paid in cash at the date of settlement, which was to be made within thirty days from date. The appellant, Gressitt, declined to sign the contract or to accept the deposit. Thereupon the appellees filed their bill of complaint in the Circuit Court for Baltimore County against the appellants, asking for a specific performance of the agreement to convey contained in the lease of April 27, 1944. Separate but identical demurrers were filed to this bill, and were overruled by the chancellor, whereupon an appeal was taken here by both defendants.

The question before us is whether the bill of complaint, on its face, states a cause of action which the appellants should be required to answer. The appellants say it does not, because the option to purchase during the term of the original lease does not carry over into the subsequent tenancy, but expires with the expiration of the original lease.

This Court recently decided that where a lease, with a right of renewal or extension, contains an option to purchase, it will be considered as an indivisible contract and that the option to purchase goes along with the term, unless some contrary intention clearly appears. *Schaeffer v. Bilger*, 186 Md. 1, 45 A. 2d 775, 163 A. L. R. 706. In that case it was stated that a different situation would exist where a lease was not renewed or a term extended by agreement, but where the tenant merely held over as a tenant from year to year. In such a situation, it was stated, the tenant would hold over subject to all the covenants in the original lease which were applicable to his new situation. As authority for that statement, there were cited the cases of *De Young v. Buchanan*, 10 Gill & J. 149, 32 Am. Dec. 156, and *Gostin v. Needle*, 185 Md. 634, 45 A. 2d 772, 774.

The question what is meant by the phrase "Applicable to the new situation" was discussed in the case of Gostin v. Needle, and it was stated: "Whether a particular clause in the original lease is 'applicable to the new situation' depends not upon the mere wording of the clause or whether the clause is 'usual and ordinary,' but upon the nature of the clause, i. e., whether it is consistent with 'the new situation.' In other words, is 'the new situation' sufficiently similar to the original situation to warrant the inference that the clause is one of the implied terms of the new tenancy?" Gostin v. Needle also cites *De Young v. Buchanan, supra,* and *Smith v. Pritchett,* 168 Md. 347, 178 A. 113, 115, 98 A. L. R. 212, as authority for the statement that a tenant holding over, "*Impliedly* holds subject to all the covenants in the lease which are applicable to his new situation." (Italics supplied.) In De Young v. Buchanan there is found the even more definite statement approved in Smith v. Pritchett that "* * * it follows as a necessary and unavoidable conclusion that in the absence of any new and express stipulation in such cases, and when the relation of landlord and tenant does exist, the law will imply those terms, which are found in the contract which has expired."

The appellants contend that the present tenancy is one from month to month, or at will, and not from year to year, in view of the fact that the lease provides that no notice, required by any statute, is requisite to end the tenancy under the lease. No authority is cited for this contention, and, in view of our decisions otherwise, it cannot now be maintained. The appellant's chief contention, however, is that as the option in the lease is stated to exist "any time during the life of this lease, after April 27, 1944," there is a limitation of the option by the terms of the lease to the life of the lease. They contend that the rule of implication laid down in *De Young v. Buchanan, supra, Smith v. Pritchett, supra,* and *Gostin v. Needle, supra,* as well as *Schaeffer v. Bilger, supra,* cannot be applied to this case because of the specific wording of the lease. It is certainly true that the

parties to a lease can word an option in such a way that it does not carry over. It is just as true that it does carry over in the absence of a clear statement to the contrary. The lease in *Gostin v. Needle, supra,* which had to do with the right of the tenant to receive damages in case the landlord sold during the term, provided: "Should The Landlords at any time during the term of this lease sell, or agree to sell * * *," etc. That clause is almost identical with the wording in the lease in the case at bar. We held, as above quoted, that the applicability of the clause to the new situation does not depend upon the mere wording of the clause, and decided, in that case, that the clause was applicable to the new tenancy. We reach the same conclusion in the instant case, for the same reasons.

The English cases hold that a lease is one contract and an option to purchase, another. See *Re Leeds and Batley Brewers, Ltd.,* and *Bradbury's Lease* (1920), 2 Ch. 548, 89 L. J. Ch., N. S., 645, and cases cited in *Schaeffer v. Bilger, supra,* and the annotation in 37 A. L. R. 1245. The English cases also held that a covenant for renewal of a lease did not concern the estate demised, and was not enforceable against an assignee of the reversion. *Woodall v. Clifton* (1905), 2 Ch. 257. But this Court declined to follow these English cases on the last question as far back as 1909 when the case of *Hollander v. Central Metal & Supply Co.,* 109 Md. 131, 71 A. 442, 23 L. R. A., N. S., 1135, was decided, and we declined to follow the English cases on the first point in the recent case of *Schaeffer v. Bilger, supra.*

The remaining point raised by the appellants is that the option is not certain and definite, because the terms of sale are left to future adjustment and these must be subject to the approval of the F. H. A. The offer to accept the option contained in the contract of sale presented is for cash and, on the face of it, presents no occasion for approval by the F. H. A. In a recent specific performance case where there was an option given on certain premises and buildings, "price not to exceed $2,500 with interest not to exceed 6% per annum," we

held that this contract did not show an intention that the purchaser was to have an extension of credit and that the contract could be specifically enforced, because when the offer to pay cash was made, that made the time of settlement certain, and eliminated the question of credit. *Trotter v. Lewis,* 185 Md. 528, 45 A. 2d 329, 331. On its face, therefore, we hold that the bill of complaint presents a good cause of action, is not demurrable, and requires an answer.

It is not to be concluded from this, however, that the contract is specifically enforceable. We are unable to determine from the words of the option what is meant by requiring the approval of the F. H. A. to the contract. It may be that these houses were held subject to some restrictions of the Federal Housing Administration and are still subject to these limitations. It is also a matter of common knowledge that under the Office of Price Administration, landlords could not terminate tenancies, except under certain circumstances, and with the approval of the O. P. A. It may very well be that at the expiration of the lease, the landlord was not able to prevent the tenant from holding over, although it might have been possible for it, in such a case, to terminate the option at the expiration of the lease, if the holding over was against its will. There are also possible questions involved as to the termination of the authority of the Federal Housing Administration, which we do not feel we should decide merely upon the wording of United States statutes and executive orders. All of these present matters which should be inquired into by the chancellor before the passage of a final decree in this case. The situation then may be found to be entirely different from that which we now find presented on this record.

As the case is before us, we are passing merely upon the sufficiency of the bill of complaint. We find the chancellor committed no error in overruling the demurrer, and his order will be affirmed.

*Order affirmed, with costs.*